**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

DAVID A. HICKS,                              )    CASE NO.  4:15-cv-02118
                                             )
        Petitioner,                        )    JUDGE BOYKO
                                             )
           v.                        )    MAGISTRATE JUDGE VECCHIARELLI
                                             )
FEDERAL BUREAU OF PRISONS,                   )
                                             )    **REPORT AND RECOMMENDATION**
        Respondent.                        )

This case is before the magistrate judge pursuant to Local Rule 72.2.  Before the court is Respondent's motion to dismiss, or alternatively motion for summary judgment, the petition for a writ of habeas corpus filed on October 13, 2015 by David A. Hicks, *pro se*, pursuant to 28 U.S.C. § 2241.  (Doc. Nos. 1, 6.)  Hicks is being held in custody at Federal Correctional Institution, Elkton ("FCI Elkton") in Lisbon, Ohio.  (*Id*.)

## I.  Background

David A. Hicks  ("Hicks" or "Petitioner"), a federal prisoner,[1] brings this habeas corpus action pursuant to 28 U.S.C. § 2241 to challenge the forfeiture of twenty-seven (27) days of good-time credit.  (Doc. No. 1.)  Petitioner asserts that he exhausted his administrative remedies before filing the petition (Doc. No. 1-2 at p. 3), and Respondent

---

[1]  Respondent avers that while the Petition names the Federal Bureau of Prisons ("BOP") as the respondent, the proper respondent is Ralph Hanson, Warden of FCI Elkton.  (Doc. No. 6 at n. 1.)

does not challenge that assertion.[2]  (Doc. No. 6 at p. 4.)  The Court ordered

Respondent to file an answer to the petition and show cause why the petition should

not be granted.  (Doc. No. 3.)  Respondent filed a response and motion to dismiss, or

alternatively, motion for summary judgment.  (Doc. No. 6.)  Petitioner filed a traverse, to

which Respondent filed a reply.  (Doc. Nos. 7, 8.)

In an Incident Report dated July 29, 2013, Unit Manager, Brian E. Sparks

reported he had been listening to a phone call made by Hicks on July 20, 2013, during

which Hicks made the following statements:

> [O]ur unit manager got punched, that was cool, wish I'd seen it ... asshole,
> complete asshole ... somebody is gonna show up at his house and kill him
> and his entire family.  He deserves it.  They'll never figure out who did it ...

(Doc. No. 6-1, Exh. 1, Attachment A.)

The Incident Report was delivered to Hicks the following day on July 30, 2013.

(*Id*.)  Hicks did not deny making the above statements to a Committee, but made the

following comments: "I didn't intend it that way.  I regret the comment.  I didn't mean it.

I was venting.  I was talking to my mother.  I'm sorry.  There's no threat to him."  (*Id*.)

On August 2, 2013, Hicks was given a "Notice of Discipline Hearing Before the

DHO," which indicated he was charged with a violation of Code No. 203 for

"Threatening."  (Doc. No. 6-1, Exh. 1, Attachment B.)  On the same date, Hicks

received and signed a list setting forth "Inmate Rights at Discipline Hearing."  (*Id*.)  At

---

[2]  *Wesley v. Lamanna*, 27 Fed. App'x 438, 438-39 (6th Cir. 2001) ("Although not a statutory requirement, it is well established that federal prisoners are required to exhaust their administrative remedies before filing a habeas corpus petition under § 2241.") (citing *Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992)); *accord Powell v. Hanson*, 4:15-cv-408, 2016 U.S. Dist. LEXIS 42434 (N.D. Ohio, Mar. 20, 2016) (Lioi, J.).

the hearing, Hicks waived his right to have a staff member represent him, and indicated on the notice form that he did not wish to have witnesses on his behalf.  (*Id*.; Doc. No. 6-1, Exh. 1, Attachment C.)  The Discipline Hearing Officer Report contains the following summary of Hick's statement:

> The DHO first ensured inmate Hicks had received a copy of the incident report, understood his rights, wished to now waive the previously requested staff representative, did not want to call any witnesses, and had no documentary evidence to present. The DHO read aloud section 11 of the incident report and asked Hicks if it were true.  He admitted that he did make the statements he is quoted as saying in the incident report, but that he did not mean them as a threat.  He said he was talking to his mother and was frustrated over some interactions that he had with Mr. Sparks. He admitted that they were strong words and that they didn't sound very good, but that he was just venting when he said them.  He said that he never called Mr. Sparks by name and never said he was going to hurt him. He referenced his clear conduct record and described himself as a rule abiding inmate.  He also said even though his words seem strong and unpleasant, they are allowable under the 1st Amendment.

(Doc. No. 6-1, Exh. 1, Attachment C.)

The Disciplinary Hearing Officer (DHO) found that Petitioner's statements were "appalling" and "outrageous and intolerable."  (Doc. No. 6-1, Exh. 1, Attachment C.) However, the DHO concluded that Petitioner's remarks were not a direct violation of Inmate Disciplinary Policy ("IDP") No. 203, threatening another with bodily harm.  (*Id*.) Instead, the DHO found Petitioner violated IDP No. 299 – "Conduct which disrupts or interferes with the security and orderly running of the institution."  (*Id*.)  The DHO concluded that Petitioner's conduct was "most like" threatening another with bodily harm.  (*Id*.)  The DHO sanctioned Petitioner with the disallowance of 27 days of good conduct time.  (*Id.*)

## II. Analysis

A writs of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). "The statute [§ 2241] is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (citations omitted). A petition under § 2241 may only be used by a federal prisoner to challenge the manner in which his sentence is being carried out (*e.g.*, the computation of sentence credits or parole eligibility). *See United States v. Jalili*, 925 F.2d 889, 894 (6th Cir.1999); *accord Peguero v. Hanson*, 4:14-cv-2642, 2015 U.S. Dist. LEXIS 45964 at *2 (N.D. Ohio, Apr. 8, 2015) (Polster, J.) As the revocation of the good conduct time affects the manner in which Petitioner's sentence is carried out, his petition has been properly brought under § 2241.

This court's ability to review prison disciplinary proceedings is limited. *See, e.g., Mejia v. Warden, FCI Elkton*, 2015 U.S. Dist. LEXIS 74537 (N.D. Ohio June 8, 2015) (Nugent, J.) The sole issue for the Court is to determine whether the prisoner received a hearing complying with the basic requirements necessary to satisfy due process – this standard is not a difficult one to meet. *See, e.g, Peguero*, 2015 U.S. Dist. LEXIS 45964 at *2 2015. In order to satisfy the requirements of the Due Process Clause, prison officials need only provide a prisoner facing loss of good conduct credits, such as Hicks, with the following: (1) a written notice of the charges at least 24 hours prior to any hearing; (2) an opportunity to call witnesses and present documentary evidence in his

-4-

defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the fact-finders as to the evidence upon which the fact-finders relied and the reasons for the disciplinary action.  *See Wolff v. McDonnell*, 418 U.S. 539 (1972).  Prisoners do *not* have a due process right to confront or cross-examine witnesses or a right to counsel during prison disciplinary proceedings.  *Id*. at 569-70; *see also Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455-456 (1985) (holding that the requirements of due process are satisfied if "some evidence" supports the decision by the prison disciplinary board to revoke good time credits....  "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."))  The "some evidence" standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Hill*, 472 U.S. at 455.

Here, Petitioner does not allege that he failed to receive written notice of the charges at least 24 hours prior to his hearing, does not allege that he was prevented from calling witnesses or presenting documentary evidence, and does not allege that a written statement setting forth the factual findings against him was lacking.  Instead, Petitioner appears to argue only that "some evidence" supporting his discipline is lacking.  As this Court understands Petitioner's argument, he believes the DHO's finding is unsupportable because its is internally contradictory.  Petitioner contends there was no real threat made against Mr. Sparks and that the DHO concluded that he did not make a direct threat against Mr. Sparks.  (Doc. No. 1-2.)  Petitioner's argument

-5-

is immaterial, as he was not found to have violated IDP No. 203, but rather IDP No.

299.  The latter is defined as follows:

> Conduct which disrupts or interferes with the security or orderly running of
> the institution or the Bureau of Prisons most like another High severity
> prohibited act.  This charge is to be used only when another charge of
> High severity is not accurate.  The offending conduct must be charged as
> "most like" one of the listed High severity prohibited acts.

(Doc. No. 6-2 at p. 48.)

This Court finds that there is ample evidence that Petitioner made the

statements that lead to the disciplinary action, and these statements constitute "some

evidence" of conduct that would disrupt or interfere with the orderly operation of the

prison as, at a minimum, they amount to veiled threats against prison staff.  Petitioner's

contention in his Traverse – that the DHO erroneously relied on Mr. Spark's biased and

embellished statements and that no one else reviewed the phone call – is baffling.

(Doc. No. 7.)  At no point did Hicks ever deny making the statements.  To the contrary,

at the hearing, "[t]he DHO read aloud section 11 of the incident report and asked Hicks

if it were true.  He admitted that he did make the statements he is quoted as saying in

the incident report, but that he did not mean them as a threat."  (Doc. No. 6-1, Exh. 1,

Attachment C.)  Petitioner's contention – that the statements attributed to him are

"fabrications" by an angry staff member – is contradictory and cannot serve as a basis

for disregarding the evidence of record.

### III.  Conclusion

Although Petitioner attempts to characterize the revocation of his good conduct

time as his claim as a denial of due process, he merely challenges the outcome of his

disciplinary hearing without any meaningful challenge concerning notice or the hearing

process in general.  Furthermore, as there is "some evidence" to support the a violation of IDP No. 299, Petitioner is incapable of demonstrating that he was denied due process.  For the foregoing reasons, it is recommended that the petition be dismissed.


Date: June 30, 2016                                  /s/ Nancy A. Vecchiarelli
                                                     United States Magistrate Judge

## OBJECTIONS

    **Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**